IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PATRICK H. MONTERO,           )   CIVIL NO. 15-00196 HG-KSC
                              )
              Plaintiff,      )
                              )
        vs.                   )
                              )
CAROLYN W. COLVIN, Social     )
Security Administration       )
Commissioner,                 )
                              )
              Defendant.      )
_____)

**ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY
ADMINISTRATION COMMISSIONER**


This case involves the appeal of the Social Security

Administration Commissioner's denial of Supplemental Security

Income benefits to Plaintiff Patrick H. Montero.

Plaintiff filed an application for Supplemental Security

Income on the grounds that injuries to his arms and wrists

have prevented him from doing any work since November 1, 2010.

The Social Security Administration denied his application.

Following an administrative hearing, the Administrative Law

Judge ("ALJ") held that Plaintiff was not disabled at any time

through the date of the ALJ's decision of November 12, 2013.

The Appeals Council denied Plaintiff's request for review and

Plaintiff appealed to this Court.

The Court **AFFIRMS** the decision of the Social Security Administration Commissioner.

## PROCEDURAL HISTORY

On June 30, 2011, Plaintiff Patrick H. Montero filed an application for Supplemental Security Income with the Social Security Administration.  (Administrative Record ("AR") at 110-16, 126, ECF No. 15).

On September 15, 2011, the Social Security Administration denied Plaintiff's application.  (AR at pp. 53-61, 75).

On November 7, 2011, Plaintiff moved for Reconsideration of the denial of his Supplemental Security Income Application. (AR at p. 79).

On November 2, 2012, Reconsideration was denied.  (AR at pp. 63-73, 82-84).

On November 27, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at p. 85).

On October 24, 2013, an ALJ conducted a hearing on Plaintiff's Application.  (AR at pp. 23-52).

On November 12, 2013, the ALJ issued a decision denying Plaintiff's request for Supplemental Security Income.  (AR at pp. 6-16).

On December 15, 2013, Plaintiff filed a request for review of the ALJ's decision before the Appeals Council for the Social Security Administration.  (AR at p. 4).

On March 27, 2015, the Appeals Council for the Social Security Administration denied further review of Plaintiff's application and rendered a final administrative decision by the Commissioner of Social Security.  (AR at pp. 1-3).

On May 26, 2015, Plaintiff sought judicial review of the Commissioner of Social Security's final decision to deny Plaintiff's application for Supplemental Security Income in this Court pursuant to 42 U.S.C. § 405(g).  (Complaint for Review of Supplemental Security Income Determination, ECF No. 1).

On September 8, 2015, the Magistrate Judge issued a briefing schedule.  (ECF No. 20).

On October 5, 2015, Plaintiff filed PLAINTIFF'S OPENING BRIEF.  (ECF No. 21).

On November 9, 2015, Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 22).

On November 16, 2015, Plaintiff filed a Motion for an extension of 7 days to file the Reply Brief, which was granted.  (ECF Nos. 23, 24).

On November 30, 2015, Plaintiff filed PLAINTIFF'S REPLY

BRIEF.  (ECF No. 25).

On February 3, 2016, the Court held a hearing on Plaintiff's appeal of the decision of the Social Security Administration Commissioner.

## BACKGROUND

Plaintiff was born on October 2, 1961 and is a high school graduate.  (Administrative Record ("AR") at p. 27, ECF No. 15).  Plaintiff resides with his parents on the Island of Hawaii.  (Id. at pp. 27-29, 36-37).  Plaintiff filed an application for Supplemental Security Income as a result of injuries to his wrists and arms.  (Id. at p. 9).  The claim was initially denied on September 15, 2011, and again upon reconsideration on November 2, 2012.  (Id.)  Plaintiff requested a hearing on his application and on October 24, 2013, Plaintiff testified before an Administrative Law Judge. (Id.)

Plaintiff testified that in the 1990's he was in a car accident that caused his wrists to be slammed into the dashboard, resulting in injuries.  (Id. at pp. 32-33). Plaintiff also described a history of rotator cuff surgeries unrelated to his car accident.  (Id. at pp. 43-44).

Plaintiff testified that the injuries and pain symptoms have increased over time.  (Id. at pp. 32-33).  Plaintiff had

4

surgery on his left wrist on October 6, 2010.  (Id. at p. 12).
Plaintiff stated that as of November 1, 2010, he was no longer
able to engage in his previous work as a tree trimmer and a
construction laborer.  (Id. at pp. 27-28, 33).

Plaintiff's medical records reflected pain and weakness
in both writs, carpal tunnel syndrome and decreased range of
motion in both wrists, and swelling and mild separation of
bones in the left wrist.  (Id. at pp. 12-13, 338-39).

Plaintiff testified that he could still perform tasks
with his right-dominant hand and was able to engage in most
daily activities and tasks around the house.  (Id. at pp. 34-
36).  Plaintiff testified that he had more pain and
limitations in using his left hand.  (AR at pp. 39-40).

The Administration Law Judge denied Plaintiff's
application for benefits, finding that although he could not
perform his previous work, there was work that existed in
significant numbers that Plaintiff could perform.  (Id. at pp.
15-16).  The Administration Law Judge relied on the testimony
of a vocational expert to find that someone with Plaintiff's
limitations could perform work as a Flagger, Usher, Sandwich
Board Carrier, or Boat Rental Clerk.  (Id.)

Plaintiff sought review of the Administrative Law
Judge's decision with the Appeals Council, which denied

Plaintiff's request for review and rendered a final administrative decision by the Commissioner of Social Security. (Id. at pp. 1-3).

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

## ANALYSIS

6

## I.  Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits under the Social Security Act, 42 U.S.C. §§ 423, 1382c.  The regulations establish a five-step sequential evaluation process to determine if a claimant is disabled.  The Commissioner of the Social Security Administration reviews a disability claim for Supplemental Security Income by evaluating the following:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled. If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)  Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the

claimant is disabled.

Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1052

(9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520; 416.920).

The claimant has the burden of proof at steps one through

four, and the Commissioner has the burden of proof at step

five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir.

2001).

## II.  The Administrative Law Judge Reviewed Plaintiff's Application By Using the Five-Step Sequential Evaluation

At the Plaintiff's October 24, 2013 administrative

hearing, the Administrative Law Judge ("ALJ") for the Social

Security Administration reviewed Plaintiff's claim by engaging

in the five-step sequential evaluation.

First, the ALJ determined that Plaintiff was not engaged

in substantial gainful activity since the date of his

Application for Supplemental Security Income. (Administrative

Record ("AR") at p. 11, ECF No. 15).

Second, the ALJ found that Plaintiff had an impairment

that limited his ability to work based on the injuries to his

wrists following a car accident in the 1990's.  (AR at pp. 12,

32-33, ECF No. 15).  Plaintiff also reported a history of

rotator cuff repair surgery, and a recent surgery in October

6, 2010 performed on his left wrist.  (AR at pp. 12, 32-34,

8

43-44, ECF No. 15).

Plaintiff testified that he is right-hand dominant, and that he has pain in both his right and left hand, but his left hand is worse. (AR at pp. 12, 35, ECF No. 15). Plaintiff testified that he cannot grip with his left hand, and that his wrist pain is aggravated by doing basic tasks like getting dressed, bathing, driving, washing dishes, or holding any object for any length of time. (AR at pp. 12, 35-43, ECF No. 15).

The ALJ reviewed the medical evidence and testimony and determined Plaintiff had the following severe impairments:

> scapho-lunate advanced collapse type wrist, status post radial styloidectomy and injury to the superficial branch of the radial nerve in the left upper extremity; and, degenerative changes at the right first metacarpal phalangeal joint and persistence of several small ossicles adjacent to the right ulnar styloid process in the right upper extremity.

(AR at p. 11, ECF No. 15).

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d), 416.925 and 416.926.

Fourth, the ALJ evaluated the medical evidence, Plaintiff's testimony, and other evidence in the record to

9

determine Plaintiff's residual functional capacity.

The ALJ relied primarily on the medical report submitted by the examining physician, Dr. Antoine Cazin, dated October 31, 2012.  The medical report stated that Plaintiff was limited in his ability to use his upper limbs, with use of his left extremities worse than his right.  (AR at pp. 13, 338-39, ECF No. 15).  Dr. Cazin reported that Plaintiff was able to lift a fifteen pound weight with his right hand without difficulty but had difficulty lifting a ten pound weight with his left hand due to his poor left hand grip.  (AR at pp. 13, 339, ECF No. 15).  Dr. Cazin also stated that Plaintiff had some difficulty with fine manipulation.  (AR at p. 339, ECF No. 15).

The ALJ determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> [Plaintiff] can lift up to 10 pounds frequently and up to 15 pounds occasionally with the dominant right upper extremity, but he cannot lift more than up to 5 pounds occasionally with non-dominant left upper extremity; he cannot engage in forceful grasping and torqueing, with either upper extremity; and he is restricted to occasional handling and fingering and no forceful pinching, with his non-dominant left upper extremity.

(AR at pp. 11-15, 45-46, ECF No. 15).

Fifth, the ALJ found that there are jobs that exist in

10

significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity.  (AR at pp. 15-16, ECF No. 15). The ALJ examined a vocational expert in determining that there are jobs that exist in significant numbers that Plaintiff can perform.  (AR at pp. 45-48, ECF No. 15).  The ALJ determined that Plaintiff was not disabled and denied his application based on the fifth step in the Social Security Administration's sequential step evaluation process.  (AR at p. 16, ECF No. 15).

In this case, Plaintiff's appeal concerns the ALJ's decision regarding step five in the evaluation process.  The Plaintiff challenges the ALJ's determination that there is available work for Plaintiff that exists in significant numbers in the national economy.

**III.    The ALJ Properly Concluded that Plaintiff Can Perform Work that Exists in Significant Numbers in the National Economy**

The Commissioner for Social Security Administration must show that a claimant can perform some work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett v. Apfel, 180 F.3d

1094, 1100 (9th Cir. 1999).  The Commissioner may satisfy this burden with testimony of a vocational expert.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses hypothetical questions that accurately describe all of the limitations and restrictions of the claimant that are supported by the record.  Tackett, 180 F.3d at 1101; Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).

ALJ's routinely rely on the Dictionary of Occupational Titles issued by the United States Department of Labor "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The Dictionary of Occupational Titles is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

The ALJ found that Plaintiff had the residual functional capacity to perform "light work" with restrictions limiting lifting of certain weights, and limiting the use of his hands. Specifically, the ALJ found that Plaintiff "can lift up to 10

12

pounds frequently and up to 15 pounds occasionally with the dominant right upper extremity, but he cannot lift more than up to 5 pounds occasionally with non-dominant left upper extremity; he cannot engage in forceful grasping and torqueing, with either upper extremity; and he is restricted to occasional handling and fingering and no forceful pinching, with his non-dominant left upper extremity." (AR at p. 11, ECF No. 15).

Plaintiff's past relevant work included work as a tree trimmer and a construction laborer. (AR at pp. 28-29, ECF No. 15). The ALJ found that Plaintiff's residual functional capacity would prevent him from engaging in his past work. (AR at p. 46, ECF No. 15).

The ALJ posed a hypothetical to the vocational expert regarding the type of other work a person with Plaintiff's residual functional capacity could perform. The ALJ posed the following hypothetical to the vocational expert:

> I want you to consider a hypothetical situation that we would have a person who would be closely approaching advanced age, have a high school education, no particular limitation sitting, standing or walking. With the dominant upper extremity, the individual would be able to lift fifteen pounds occasionally, ten pounds frequently. With the non-dominant upper extremity only occasionally up to five pounds. With either hand, no forceful grasping, twerking. With the non-dominant upper extremity, occasional handling, and fingering, and in addition to the no forceful grasping or twerking, there'd be – I'd

13

also add no forceful pinching.

(AR at pp. 45-46, ECF No. 15).

The vocational expert testified that a person with such a residual functional capacity could perform work in the following four positions:

(1) **Flagger**, Dictionary of Occupational Titles Code 372.667-022, with around 100 jobs in the local economy and at least 20,000 in the national economy;

(2) **Usher**, Dictionary of Occupational Titles Code 344.667-014,[1] with an excess of 100 jobs in the local economy and at least 34,000 in the national economy;

(3) **Sandwich Board Barrier**, Dictionary of Occupational Titles Code 299.687-014, with around 100 jobs in the local economy and at least 5,000-10,000 in the national economy; and

(4) **Boat Rental Clerk**, Dictionary of Occupational Titles Code 295.467-014, with around 100 jobs in the local economy and about 10,000 in the national economy.

(AR pp. 46-48, ECF No. 15).

The evidence shows that the ALJ considered the particular facts of Plaintiff's case and posed a complete hypothetical question to the vocational expert.  The ALJ incorporated the weight and hand-usage limitations set out in the medical report of the examining physician, Dr. Cazin, in formulating the hypothetical question to the vocational expert.  (AR at

---

[1] The Parties agree that the correct Dictionary of Occupational Titles Code for Usher is 344.667-014.  (Pla.'s Opening Brief at p. 12, n.2, ECF No. 21; Def.'s Answering Brief at p. 4, n.3, ECF No. 22).

pp. 35-42, 45-46, 338-39, ECF No. 15).

The hypothetical also incorporated Plaintiff's testimony. Plaintiff testified that he was able to do everyday tasks like button his shirt, brush his teeth, shave with a straight razor, and engage in leisure activities. (AR at pp. 35-43, ECF No. 15). Plaintiff testified that he was able to go fishing, to use a bow and arrow, and to paint his parents' house using both a roller and a brush. (<u>Id.</u>) The hypothetical posed by the ALJ incorporated the limitations identified by the Plaintiff and the examining medical physician. The hypothetical limited the use of grasping and pinching, as Plaintiff testified that he had difficulty buttoning his pants and cutting meat. (AR at pp. 35, 40, ECF No. 15).

Plaintiff challenges the ALJ's decision at step five of the evaluation process on three grounds.

First, Plaintiff argues that the ALJ erred by failing to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles.

Second, Plaintiff asserts that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles.

Third, Plaintiff claims that the ALJ did not adequately

15

develop the record and assist him in the proceedings.

**1.    The ALJ Did Not Inquire of the Vocational Expert Whether a Conflict Existed Between his Testimony and the Dictionary of Occupational Titles**

Social Security Ruling 00-4p states that when a vocational expert provides evidence to the ALJ about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between the vocational expert's evidence and information provided in the Dictionary of Occupational Titles.  S.S.R. 00-4p, 2000 WL 1898704 (2000).  SSR 00-4p further provides that the ALJ "will ask" the vocational expert if the evidence provided is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation of any apparent conflict.  Id.

The Ninth Circuit Court of Appeals held in Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) that Social Security Ruling 00-4p requires the ALJ to inquire of the vocational expert whether the expert's testimony conflicts with the presented evidence from the Dictionary of Occupational Titles.

Here, it is undisputed that the ALJ did not specifically inquire of the vocational expert whether his testimony

16

conflicted with the jobs he cited in the Dictionary of
Occupational Titles.  Plaintiff argues in his Opening Brief
that failure to conduct such an inquiry of the vocational
expert requires remand.  Contrary to Plaintiff's argument,
remand is not automatically warranted when an ALJ did not ask
the vocational expert about potential conflicts with the
Dictionary of Occupational Titles.  Rather, the ALJ's failure
to inquire is subject to "harmless error" review.  Massachi,
486 F.3d at 1154 n.19; Perea v. Comm'r Social Security, 574
Fed. Appx. 771, 771-72 (9th Cir. 2014); Huizar v. Comm'r of
Social Security, 428 Fed. Appx. 678, 679-80 (9th Cir. 2011).

> **2.   The ALJ's Failure to Ask the Vocational Expert if a
> Conflict Existed With the Dictionary of Occupational
> Titles Was Harmless Error**

The Ninth Circuit Court of Appeals has explained that it
has long recognized that harmless error principles apply in
the Social Security Act context.  Molina v. Astrue, 674 F.3d
1104, 1115 (9th Cir. 2012).

Failure to inquire of the vocational expert whether his
testimony conflicts with the Dictionary of Occupational Titles
evidence is harmless error where there is no apparent conflict
with the Dictionary of Occupational Titles.  Flores v. Colvin,
546 Fed. Appx. 638, 640-41 (9th Cir. 2013); Broom v. Colvin,

2015 WL 1180514, *5 (C.D. Cal. Mar. 13, 2015).

> **a.   There Was No Conflict Between the Vocational Expert's Testimony Regarding Light Work Positions and the Definitions in the Dictionary of Occupational Titles**

Plaintiff asserts that there was a conflict between the vocational expert's testimony as to the light work positions available and the definitions in the Dictionary of Occupational Titles.  (Pla.'s Opening Brief at p. 12, ECF No. 21).  Review of the record demonstrates that there was no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

The vocational expert responded to the ALJ's hypothetical by stating that there were light work positions available for a person with such impairments in the following four occupations:

(1)  **Flagger** is defined as follows:

Controls movement of vehicular traffic through construction projects: Discusses traffic routing plans, and type and location of control points with superior.  Distributes traffic control signs and markers along site in designated pattern.  Directs movement of traffic through site, using sign, hand, and flag signals.  Warns construction workers when approaching vehicle fails to heed signals to prevent accident and injury to workers.  Informs drivers of detour routes through construction sites.  Records license number of traffic control violators for police.  May give hand marker to last driver in line

up of one-way traffic for Flagger (construction) at
opposite end of site, signaling clearance for
reverse flow of traffic.

DOT #372.677-022, 1991 WL 673097.

(2)   **Usher** is defined as follows:

Assists patrons at entertainment events to find
seats, search for lost articles, and locate
facilities, such as restrooms and telephones.
Distributes programs to patrons.  Assists other
workers to change advertising display

DOT #344.677-014, 1991 WL 672865.

(3)   **Sandwich Board Carrier** is defined as follows:

Wears sign boards and walks in public to advertise
merchandise, services, or belief.  May distribute
handbills to passers-by [ADVERTISING-MATERIAL
DISTRIBUTOR (any industry)].  May wear costume to
attract attention [IMPERSONATOR, CHARACTER (any
industry)].  May work for labor organization and be
designed Picket, Labor Union (nonprofit org.).

DOT #299.687-014, 1991 WL 672646.

(4)   **Boat Rental Clerk** is defined as follows:

Rents canoes, motorboats, rowboats, sailboats, and
fishing equipment: Explains rental rates and
operation of boats and equipment to customer.
Assists customers in and out of boats.  Launches and
moors boats.  Tows disabled boats to shore, using
motorboat.  Calculates rental payment and collects
payment from customer.  May make minor adjustments
and repairs on motors of motorboats, such as
replacing battery, using handtools.  May pump water
out of boats, using mechanical pump.

DOT #295.467-014, 1991 WL 672596.

(AR at pp. 46-48, ECF No. 15).

19

The ALJ found that pursuant to S.S.R. 00-4p "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (AR at p. 16, ECF No. 15).

Plaintiff argues the light work positions identified by the vocational expert conflict with the Dictionary of Occupational Titles because they include requirements that he cannot perform, specifically lifting more than fifteen pounds and carrying such weight. (Pla.'s Opening Brief at p. 12, ECF No. 21; Pla.'s Reply Brief at p. 4, ECF No. 25).

Plaintiff misconstrues the record. A position classified as light work does not necessarily require the physical exertion that Plaintiff attempts to read into the definitions. The Dictionary of Occupational Titles lists Flagger, Usher, Sandwich Board Carrier, and Boat Rental Clerk positions as "light work." Each position includes the light work definition similar to the physical exertion requirements set forth in 20 C.F.R. § 416.967(b). The Dictionary of Occupational Titles lists the strength for each position as "light work" stating it as follows:

> Light work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) **and/or** up to 10 pounds of force frequently (Frequently: activity of condition exists from 1/3 to 2/3 of the time) **and/or**

> a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.  Physical demand requirements are in excess of those for Sedentary Work.  Even though **the weight lifted may be only a negligible amount**, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

See DOT #372.677-022, 1991 WL 673097; DOT #344.677-014, 1991 WL 672865; DOT #299.687-014, 1991 WL 672646; DOT #295.467-014, 1991 WL 672596 (emphasis added).

Plaintiff's argument that the positions require lifting and carrying 20 pounds is incorrect.  None of the positions indicate that lifting 20 pounds would be a mandatory requirement of the jobs.  Aside from the Sandwich Board Carrier, none of the positions describe any job tasks that would require substantial "carrying."  None of the positions describe lifting or carrying weight beyond the limitations provided in the hypothetical posed by the ALJ.  None of the positions indicate that carrying any significant weight is a requirement of the job duties identified by the vocational expert.  See DOT #372.677-022, 1991 WL 673097; DOT #344.677-014, 1991 WL 672865; DOT #299.687-014, 1991 WL 672646; DOT #295.467-014, 1991 WL 672596.

21

The vocational expert's testimony did not conflict with the Dictionary of Occupational Titles because the regulations make clear that lifting or carrying 20 pounds is not necessarily a requirement of any light work position.  The regulations provide that "[e]ven though the weight lifted [in a light work position] may be very little, a job is in [the light work] category when it required a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

The primary requirements of the positions identified by the vocational expert involve a "good deal" of sitting, standing, or walking that would prevent the positions from being classified as sedentary.  20 C.F.R. § 416.967(b); see DOT #372.677-022, 1991 WL 673097; DOT #344.677-014, 1991 WL 672865; DOT #299.687-014, 1991 WL 672646; DOT #295.467-014, 1991 WL 672596.

Plaintiff was found not to have any limitations in sitting, standing or walking as required to perform the light work jobs as identified by the vocational expert.  (AR at pp. 45-46, ECF No. 15).  Plaintiff does not dispute that he has no limitations in sitting, standing, or walking that would allow him to perform light work as limited by the hypothetical posed

22

by the ALJ.   There is no conflict between the vocational
expert's testimony as to the positions available based on the
limitations set forth in the ALJ's hypothetical and the
definitions in the Dictionary of Occupational Titles.

> **b.   There Was No Conflict Between the Vocational
> Expert's Testimony as to the Jobs Available
> Based on Use of Hands and the Definitions in the
> Dictionary of Occupational Titles**

Plaintiff argues in his opening brief that the Usher and
Boat Rental Clerk positions require "good use of both hands."
(Pla.'s Opening Brief at p. 12, ECF No. 21).   Plaintiff also
argues that the Flagger position requires frequent handling,
which would not be permitted with Plaintiff's left, non-
dominant hand.   (<u>Id.</u>)   Again, Plaintiff has mischaracterized
the requirements of the positions identified by the vocational
expert.

None of the positions identified by the vocational
expert, including the Usher and Boat Rental Clerk positions,
state that "good use of both hands" is required.   <u>See</u> DOT
#344.677-014, 1991 WL 672865; DOT #295.467-014, 1991 WL
672596.

Courts in the Ninth Circuit Court of Appeals have
routinely held that a job requiring reaching, handling, or
fingering does not necessarily involve the use of both hands

absent affirmative evidence to the contrary.  Feibusch v. Astrue, Civ. No. 07-0244BMK, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008); Slye v. Astrue, 2012 WL 425266, *4 (C.D. Cal. Feb. 9, 2012) (citing McConnell v. Astrue, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010)(collecting cases) and Gutierrez v. Astrue, 2012 WL 234366, at *2 (C.D. Cal. Jan. 24, 2012) (finding that the requirement that an employee frequently use his hands to perform a job does not mean that he has to be able to use both hands.")).

The ALJ's hypothetical limited the use of hands in the question posed to the vocational expert.  Specifically, the ALJ stated: "With either hand, no forceful grasping twerking. With the [left] non-dominant upper extremity, occasional handling, and fingering, and in addition to the no forceful grasping or twerking, there'd be — I'd add no forceful pinching."  (AR at pp. 45-46, ECF No. 15).

The vocational expert took these limitations into account and identified positions that required only **occasional** reaching, handling, and fingering using one hand.  It is undisputed that Plaintiff was not limited in reaching, handling, or fingering with his dominant right hand.

There is no conflict between the Dictionary of Occupational Titles definitions and the testimony of the

24

vocational expert as to the positions available.  Plaintiff's

contentions that the positions identified by the vocational

expert conflict with the definitions because they require

considerable use of both hands is belied by the record.

> **c.  The ALJ Did Not Err in Relying on the Vocational Expert's Testimony to Find that Work is Available for Plaintiff in "Significant Numbers" in the National Economy**

Plaintiff asserts that the ALJ erred by failing to make

appropriate inquiries of the vocational expert about the

number of available jobs someone with Plaintiff's limitations

could perform.  (Pla.'s Opening Brief at p. 13, ECF No. 21).

According to the Social Security Act, an individual shall

be determined to be under a disability if he is unable to do

his previous work and cannot engage:

> in any other kind of substantial gainful work which
> exists in the national economy regardless of whether
> such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work.  For purposes of the preceding sentence (with
> respect to any individual), 'work which exists in
> the national economy' means work which exists in
> significant numbers either in the region where such
> individual lives or in several regions of the
> country.
>
> 42 U.S.C. § 1382c(a)(3)(B).

The burden of establishing that there exists other work

in "significant numbers" lies with the Commissioner of Social

Security.  Tackett, 180 F.3d at 1099.

The AJL did ask the vocational expert about the number of positions available for someone with Plaintiff's limitations and relied on the vocational expert's testimony that there are approximately 69,000 to 74,000 Flagger, Usher, Sandwich Board Carrier, and Boat Rental Clerk positions in the national economy.  The ALJ relied on the vocational expert's testimony to find that work exists for Plaintiff in significant numbers. (AR at pp. 16, 46-48, ECF No. 15).

The Ninth Circuit Court of Appeals has "never set out a bright-line rule" for what constitutes a significant number of jobs but it has found that more than 25,000 jobs nationally constitutes a significant number.  Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014).

The regulations explain that work does not constitute a significant number when there are only "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s]."  20 C.F.R. § 416.966(b).

The ALJ's reliance on the testimony of the vocational expert as to the number of relevant jobs in the national economy was warranted.  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  The ALJ's finding that more than 69,000

26

positions were available for Plaintiff in the national economy does not fall into the category of "isolated jobs" existing in "very limited numbers." 20 C.F.R. § 416.966(b). The ALJ's finding that 69,000 or more positions exist in the national economy satisfies the requirements of 42 U.S.C. § 1382c(a)(3)(B). <u>Id.</u>

An ALJ must clarify discrepancies in the record only where there is an apparent unresolved conflict that arises between the vocational expert's testimony and the Dictionary of Occupational Titles. <u>Mickelson-Wurm v. Comm'r Soc. Sec. Admin.</u>, 285 Fed. Appx. 482, 486 (9th Cir. 2008). There was no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles and the ALJ properly determined that the Plaintiff was not disabled. <u>Bayliss</u>, 427 F.3d at 1218.

> **3.   The ALJ Properly Developed the Record and Afforded Plaintiff the Opportunity to Question the Vocational Expert and Call Witnesses**
>
> **a.   The ALJ Was Not Required to Ask a Hypothetical to the Vocational Expert On Behalf of the Plaintiff that Included Impairments that Were Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred when he did not help him formulate a hypothetical to the vocational expert. (Pla.'s Opening Brief at p. 14, ECF No. 21).

The ALJ has an affirmative duty to assist the claimant in developing the record.  <u>Bustamante</u>, 262 F.3d at 954.  The Ninth Circuit Court of Appeals has explained that when a claimant appears at a hearing without counsel, the ALJ must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir. 1985).

The hearing transcript demonstrates that the ALJ properly developed the record.  The ALJ explicitly informed Plaintiff that he could cross-examine the vocational expert about his testimony and the ALJ affirmatively volunteered to assist the Plaintiff with posing hypothetical questions to the vocational expert.  (AR at pp. 48-49, ECF No. 15).  The ALJ explained the process to Plaintiff as follows:

> ALJ:   Okay.  What, what's happening between me and Mr. Fleck [the vocational expert], Mr. Montero, is in this analysis if, if I – I can pose a hypothetical situation.  The vocational expert responds and tells me whether there are any jobs to which a person who fits that profile with those limitations could – that exist, the jobs exist in the national economy .... So, you at this point can ask Mr. Fleck about any answers he gave.  You can also say, you know, Judge, I heard what you said, but I can't do all those things that you said I could do, and I can help you pose a different hypothetical question to Mr. Fleck.

(AR at pp. 48-49, ECF No. 15).

Plaintiff responded to the ALJ's offer of assistance by asserting that he could not work in any position.  (AR at pp. 49-50, ECF No. 15).  Plaintiff did not pose a different hypothetical to the vocational expert and did not request that the ALJ pose a different hypothetical to the vocational expert.

In Plaintiff's briefs he claims that he responded to the ALJ's offer of assistance by attempting to pose a hypothetical question and alleges the ALJ ignored his testimony.  (Pla.'s Opening Brief at pp. 15-16, ECF No. 21; Pla.'s Reply Brief at p. 9, ECF No. 25).  Plaintiff has misstated the record.  The transcript reflects that Plaintiff's response to the ALJ's offer of assistance was as follows:

> Pla:    Well, well, you know what, you know what?  I'm thinking you you, like I'm hearing this, and I'm thinking, you know I've considered getting you know similar types of jobs, but what's – why I say I cannot be responsible and be of any really value to any employer is because there's a lot of times like I say, I'm sitting here right now.
>
> I, I didn't do nothing just now, and my hands start aching.  It just starts aching, and any – you ever had pain where you cannot, you cannot think straight, like it kind of boggles your mind, I mean.  You know, I, I get that, and I, I don't, I, I don't think I could be of any use to, to anybody, like I say I, I, I do things

around the house at home, I, I, I cannot, I
cannot do it continuously everyday.  I'm,
I'm not okay everyday.

Some, some days some, just out of the blue,
I mean I just - it just starts aching.  I,
I don't know why maybe something I did
yesterday, you know, and it agitated it,
or, or what, but it just - you know and,
and I know of like an employer they need
somebody who they can rely on.  I mean you
know, every, every employer wants somebody
they can, they can depend on.  That's going
to be there when they need them, you know
all, all the time, I mean you know, and I
cannot, I, I can't.  I, I really I can't, I
can't - I wish I could say I could, I mean,
and - because I, I would like nothing more
than to be working.

(AR at pp. 49-50, ECF No. 15).

Plaintiff did not express a desire to pose a question to

the vocational expert.  Plaintiff argued that he was unable to

work in any position due to his injuries.

Plaintiff also alleges there was an error by the ALJ

because he did not include limitations in his hypothetical

based on Plaintiff's testimony that he is unable to engage in

any work.  Plaintiff relies on language in the Ninth Circuit

Court of Appeals' decision in <u>Gallant v. Heckler</u>, 753 F.2d

1450, 1456 (9th Cir. 1984) to argue that an ALJ should include

limitations in a hypothetical that he does not find credible.

(<u>See</u> Pla.'s Opening Brief at p. 9, ECF No. 21).

Contrary to Plaintiff's position, the ALJ is not required

30

to pose hypothetical questions to the vocational expert when the limitations in the hypothetical are not supported by substantial evidence. Magallanes, 881 F.2d at 756.  The Ninth Circuit Court of Appeals has routinely held that it is proper for an ALJ to limit a hypothetical to the limitations that are supported by substantial evidence in the record.  Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) (citing Osenbrock, 240 F.3d at 1164); Pruitt v. Comm'r Soc. Sec., 612 Fed. Appx. 891, 894 (9th Cir. 2015); Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).

Plaintiff argues in his briefs to the Court that the ALJ should have included limitations for rest breaks and days missed from work into the hypothetical posed to the vocational expert. (See Pla.'s Opening Brief at p. 15, ECF No. 21; Pla.'s Reply Brief at pp. 10-12, ECF No. 25).  The ALJ was not required to pose these limitations to the vocational expert because he discredited Plaintiff's testimony regarding the need for such limitations.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).  Plaintiff himself chose not to pose a hypothetical with these limitations and he did not testify as to his ability to work if provided with a typical employer's sick leave benefits.

Plaintiff argues that the ALJ did not issue a credibility determination that would support the exclusion of Plaintiff's testimony from the ALJ's hypothetical. (Pla.'s Reply Brief at p. 11, ECF No. 25). Plaintiff is incorrect. The ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely credible." (AR at p. 12, ECF No. 15).

The ALJ is not required to believe every allegation of disabling pain made by a claimant. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113 (citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).

The ALJ credited the medical evidence in the record, particularly the examining physician's report as to the limitations in Plaintiff's upper extremities. (Id. at pp. 13-14, ECF No. 15). The ALJ incorporated these limitations in the hypothetical posed to the vocational expert.

The ALJ did not credit Plaintiff's statements that he was unable to work at all based on the persistence of his symptoms. The ALJ declined to credit the testimony that

32

Plaintiff was unable to work based on Plaintiff's own
statements that demonstrate he has adequate mobility in his
extremities that allow him to perform regular tasks.  The ALJ
stated: "[w]ith regard to his activities of daily living, he
testified that he tries to do things around the house, though
certain things cause wrist/hand pain.  He stated he recently
painted the home, but it took him about half a year...In his
function reports, while he described difficulty using his
hands, his statements essentially reflect adequate mobility,
for instance, he is able to go shopping for necessities, and
has gone fishing."  (AR at p. 14, ECF No. 15).

    The ALJ did not err in discrediting Plaintiff's testimony
that he may be unable to work in the positions identified by
the vocational expert.  The ALJ may discredit the claimant's
testimony that he is totally impaired and unable to work when
the claimant testifies that he is able to participate in daily
activities, even when the testimony suggests some difficulty
functioning.  Molina, 674 F.3d at 1113; Fair, 885 F.2d at 603;
Turner v. Comm'r Soc. Sec., 613 F.3d 1217, 1225 (9th Cir.
2010).

    The ALJ was not required to pose a hypothetical to the
vocational expert based on the pain limitations Plaintiff
claimed he had because the ALJ properly found that such

limitations were not supported by the record.  <u>Rollins</u>, 261
F.3d at 857.

### b.   Plaintiff Declined to Call His Witness

Plaintiff claims that the ALJ erred by not asking him at
the end of the hearing whether he wanted to call a witness.
(Pla.'s Opening Brief at p. 16, n.4, ECF No. 21).

The record reflects that Plaintiff was informed about the
procedures for calling witnesses at the hearing and never
affirmatively requested to have a witness testify.  (AR at pp.
49-50, ECF No. 15).

At the beginning of the hearing, the ALJ explained the
purpose of the hearing and informed the Plaintiff that his
decision would be based on the exhibits and testimony taken at
the hearing.  (AR at p. 25, ECF No. 15).  The ALJ stated that
it was his understanding that the Plaintiff had brought a
witness to testify and informed Plaintiff that he would be
allowed to call her to testify following Plaintiff's own
testimony.  (<u>Id.</u>)

Plaintiff responded to the ALJ by stating: "She just was,
if you needed to, you know ask her any question or anything
like that."  (<u>Id.</u>)

Following the testimony of the Plaintiff and the

vocational expert, the ALJ provided Plaintiff the opportunity to question the vocational expert and to provide additional testimony.  (AR at pp. 49-50, ECF No. 15).  Plaintiff provided additional testimony but he never requested that a witness testify on his behalf. (Id.)  The ALJ explained the process by which he would issue a decision and informed Plaintiff of potential actions he could pursue after the hearing.  (Id. at pp. 50-51).  Plaintiff did not indicate he wished to call a witness.

Plaintiff has not demonstrated any prejudice or unfairness by the ALJ as Plaintiff was provided with the opportunity to call a witness but did not do so.  See Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981) (explaining that lack of counsel does not affect the validity of an administrative hearing unless the claimant can demonstrate prejudice or unfairness).

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision.

### CONCLUSION

The Commissioner of Social Security Administration's decision is **AFFIRMED**.

The Clerk of Court is Ordered to **CLOSE THE CASE**.


IT IS SO ORDERED.

DATED: February 5, 2016, Honolulu, Hawaii.



  /s/ Helen Gillmor

Helen Gillmor
United States District Judge


Patrick H. Montero v. Carolyn W. Colvin, Social Security
Administration Commissioner; Civ. No. 15-00196 HG-KSC; **ORDER
AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION
COMMISSIONER**